IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH BUCCHINO and NICHOLE BUCCHINO,

        Appellants,

vs.                                 No. CV 10-1177 BB/CG

WELLS FARGO BANK, N.A.

        Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on an appeal from a Memorandum Opinion entered by the United States Bankruptcy Court for the District of New Mexico on September 9, 2010. *See In re Bucchino*, 439 B.R. 761 (Bankr. D.N.M. 2010). The bankruptcy court granted Wells Fargo's ('Bank') cross-motion for summary judgment, finding that the Bucchino's ('Debtors') did not have standing to bring their complaint, and that the Bank did not willfully violate the automatic stay by placing an administrative freeze on the Debtors' accounts. The matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Doc. 30). For the reasons set forth below, I recommend that the decision of the bankruptcy court be **AFFIRMED**.

    I.     **BACKGROUND**

        i.     **Undisputed Facts**

Joseph and Nichole Bucchino filed for Chapter 7 Bankruptcy on March 26, 2010. (*See* Record on Appeal, Doc. 19 at 16).[1] At that time, the Debtors had three bank accounts open at Wells Fargo - a checking account and two savings accounts. (*Id.* at 17). On that

---

[1] The Bankruptcy record on appeal has been reproduced in its entirety on the docket for this appeal. For ease of review, all citations to the record will reflect its current location on the docket.

same day Debtors filed Schedules B and C of their bankruptcy petition. (*Id.*). Debtor's Schedule C initially listed two bank accounts - a Bank of America checking account overdrawn in the amount of $1.00, and a Wells Fargo checking account in the amount of $100.00. (*Id.*). The Debtors claimed that the $100.00 in the Wells Fargo account was exempt pursuant to 11 U.S.C. § 522. (*Id.*; Doc. 26 at 11).[2]

On March 30, 2010, the Bank received electronic notification of Debtors' bankruptcy petition. (Doc. 19 at 17; Doc. 26 at 8). The Bank reviewed Debtors' account information and deterrmined that the savings and checking accounts had $10,778.58, $654.21, and $1,909.58, respectively. (Doc. 19 at 17; Doc. 9 at 3). Wells Fargo is not a creditor of the Debtors. (Doc. 19 at 18). On the same day, the Bank placed an "administrative pledge" on all three accounts and listed the accounts as being "in bankruptcy status." (Doc. 26 at 8).[3] Pursuant to the administrative pledge, the Bank sent letters to Debtors and their counsel, informing them that the accounts were now "property of the estate" and that the funds were no longer available to Debtors. (Doc. 9 at 3). The letter to counsel stated that, because the accounts had become part of the bankruptcy estate, the Bank was required to transfer control of the accounts to the Chapter 7 Trustee. (*Id.*). The letter further stated that the Bank had asked for direction from the Trustee, and that "[t]he Trustee has 30 days from the First Meeting of Creditors to object to a claim of exemption for the Estate Funds. Ownership

---

[2] On April 12, 2010, Debtors amended their Schedule B to list 3 Wells Fargo bank accounts. The amended schedule stated the value of the accounts at $1,909.58, $654.21, and $1.00, respectively. (Doc. 19 at 19). Debtors claimed the entire amount of all three accounts as exempt. *(Id.).* However, these amendments are inconsequential for purposes of this appeal since the administrative pledge had already been released prior to Debtor's Schedule amendment. (*Id.*).

[3] The "administrative pledge" froze the account in the sense that it transferred ownership of the account from the Debtors to the Trustee. (Doc. 26 at 25, n. 20).

of claimed property remains with the bankruptcy estate until such time elapses or the trustee directs otherwise." (*Id.*). The letter further stated the Bank was waiting for instructions from the Trustee regarding the disposition and potential disbursement of the bank accounts. (*Id.*).

The Bank attempted on two occasions to fax a letter to the Chapter 7 Trustee, wherein the Bank stated that:

> The Estate Funds are now in bankruptcy status, which means that the funds are payable only to you or your order . . . . The Estate funds will remain in bankruptcy status until we receive direction from you regarding their dispositions, or June 18, 2010, which is 31 days after the scheduled First Meeting of Creditors. If you wish us to take any other action with the Estate Funds, please complete and sign the enclosed form, and fax it to me . . .

(Doc. 9 at 5). Following receipt of the Bank's letter, Debtor's counsel initiated an adversary proceeding against the Bank on March 31, 2010. (Doc. 23 at iii). Debtor's counsel also contacted the Chapter 7 Trustee to inform him of the administrative freeze. (Doc. 19 at 19). The Trustee then contacted Wells Fargo and directed the Bank to release the funds in all three bank accounts to Debtors. (*Id.*). The Bank promptly complied with the Trustee's request and the administrative pledge was released on March 31, 2010. (*Id.*).

## ii.    **Procedural Background**

This case came before United States Bankruptcy Judge Robert Jacobvitz on cross motions for summary judgment. Debtors contended that Wells Fargo violated the automatic stay provision of 11 U.S.C. § 362(a)(3) by placing an administrative pledge on their accounts. (Doc. 6 at 16-17). Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" following the creation of the bankruptcy estate.   11 U.S.C. § 362(a)(3).

Defendant countered that Debtors had no standing to pursue their lawsuit since the bank accounts became property of the estate upon the filing of the bankruptcy petition and only a Chapter 7 Trustee has standing to prosecute violations of the automatic stay. (Doc. 6 at 40; Doc. 7 at 3-6). Defendant further argued that the placing of an administrative pledge did not violate the automatic stay because the pledge does not allow the bank to obtain possession or exercise control over the bank accounts. (*Id.* at 6-9). Defendant asserted that the administrative pledge was in fact required under 11 U.S.C. 542(a) and (b), both of which require any entity holding property of the estate to either deliver or tender such property to the Chapter 7 Trustee. (*Id.* at 9-12).

Judge Jacobvitz determined "whether Defendant's action in placing an "administrative pledge" on Plaintiff's bank account(s) after receiving notice of Plaintiff's bankruptcy case constituted a willful violation of the automatic stay within the meaning of 11 U.S.C. § 362(a)(3) and (k)(1)." *In re Bucchino*, 439 B.R. 761, 763-64 (Bankr.D.N.M. 2010). Judge Jacobvitz held that Plaintiff's did not have standing to sue for a violation of the automatic stay, and that even if they did, the Bank's actions did not violate the automatic stay. *Id.* at 767-75. This appeal followed.

## II.    **STANDARDS OF REVIEW**

The standard for reviewing a bankruptcy court's grant of summary judgment is *de novo*, affording no deference to its decisions on questions of law. *In re Western Pacific Airlines, Inc.*, 273 F.2d 1288, 1290-91 (10th Cir. 2001). A bankruptcy court's findings of fact will be rejected only if they are clearly erroneous. *Tulsa Energy, Inc. v. KPL Prod. Co. (In re Tulsa Energy, Inc.)*, 111 F.3d 88, 89 (10th Cir. 1997).

Summary judgment is appropriate only if "the pleadings, the discovery and

4

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must present specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Affidavits or other evidence offered by the nonmoving party must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmoving party. Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Celotex,* 477 U.S. at 322).

## III.   ANALYSIS

### i.   Debtors' Standing

Before the Court may address the parties' arguments, the Court must first determine whether Debtors have standing to pursue this action. Article III, Section 2 of the United States Constitution restricts a federal court's jurisdiction to actual "Cases" and "Controversies." U.S. CONST. Art. III, § 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The Supreme Court has outlined three essential elements to constitutional standing: (1) that Debtors have suffered an "injury in fact" - which is an injury that is concrete and actual;

5

(2) causation - that the injury is fairly traceable to the challenged action of the defendant; and (3) redressability - that a favorable decision by the court will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Southern Utah Wilderness Alliance v. Office of Surface Mining Reclamation and Enforcement*, 620 F.3d 1227, 1233 (10th Cir. 2010). Debtors bear the burden of establishing standing. *Lujan*, 504 U.S. at 561.

The key dispute between the parties centers on the first element of standing - the need for Debtors to show that the Bank's actions constituted an "injury in fact" which impinged upon Debtors' legally protected interests in the purportedly exempt funds. Debtors claim that, by listing the $100 as exempt, the exemption should have been considered valid in the absence of a sustained objection to that exemption. (Doc. 23 at 9-11). Debtors argue that this conclusion is mandated by the language of 11 U.S.C. § 522(I), which provides that "[t]he debtors shall file a list of property that the debtor claims as exempt under subsection (b) of this section . . . *Unless a party in interest objects, the property claimed as exempt on such list is exempt*." 11 U.S.C. § 522(I) (emphasis added); (Doc. 23 at 9-10). Based on the theory that the $100 became exempt immediately upon the filing of the exemption, Debtors believe that the Bank violated the automatic stay provision of 11 U.S.C. § 363(a)(3) by freezing the accounts and transferring control over the accounts over to the Trustee. (Doc. 23 at 9-11).

Defendant counters that Debtors have misconceived the structure of the bankruptcy code with regard to exemptions. Defendant argues that exempted property does not actually become exempt until the time for objecting to the exemptions has passed, or a court has overruled those objections. (Doc. 26 at 13-17). Because the Debtors did not wait for the objection period to lapse prior to filing their adversarial action, Defendants contend

6

that the $100 was never actually exempt and that Debtors had no right to access those funds. (*Id.*).[4] Therefore, Debtors suffered no injury to a legally protected interest when the Bank transferred control over the accounts to the Trustee.

A short review of the bankruptcy code as it relates to the creation of the bankruptcy estate and Debtor's attempt at carving out exemptions from that estate is in order.

### ii.     Exemptions and Creation of the Bankruptcy Estate

Upon the filing of a Chapter 7 bankruptcy petition, a bankruptcy estate is created. The bankruptcy estate consists of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *McKown v. U.S. Dep't of Agric.*, 276 F.Supp.2d 1201, 1209 (D.N.M. 2003), *aff'd*, 97 F.App'x 283 (10th Cir. 2004). It is well settled that a debtor's bank accounts and any funds therein constitute property which become part of the bankruptcy estate. *See Sousa v. Bank of Newport*, 170 B.R. 492, 494 (D.R.I. 1994); COLLIER ON BANKRUPTCY ¶ 541.09, p. 541-51 (Alan. N. Resnick & Henry J. Sommer, eds., 15th rev. ed. 2010) ("Deposits in the debtor's bank account become property of the estate under section 541(a)(1)."). Following the creation of the bankruptcy estate, the Chapter 7 Trustee becomes the sole representative of the estate. 11 U.S.C. § 323(a), (b) ("The trustee in a case under this title is the representative of the estate . . . The trustee in a case under this title has capacity to sue and be sued."). The Trustee is charged with collecting the estate property, reducing that property to monetary amounts, and then

---

[4] The period for objecting to exemptions is within 30 days of the first meeting of the creditors, pursuant to 11 U.S.C. § 341(a). *See* FED. R. BANK. P. 4003(b)(1). Because the first meeting of the creditors must be held within 21-40 days from the filing of the petition, the deadline for exemption objections is usually 51 to 70 days from the filing of the petition. *See* FED. R. BANK. P. 2003(a); *In re Bucchino*, 439 B.R. 761, 773 n. 29 (Bankr. D.N.M. 2010).

disposing of the assets. 11 U.S.C. § 704(a)(1); 11 U.S.C. § 725. Because the administration of the estate is reserved solely for the Trustee, debtors have no right to control or administer assets of the estate.  *See, e.g., Estate of Spirtos v. One San Bernadino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("We therefore reaffirm our previous reasoning of our sister circuits and hold that the Bankruptcy Code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.") (collecting cases). Therefore, once the Debtors filed their bankruptcy petition, the bank accounts became part of the bankruptcy estate and were no longer available to Debtors for their personal use.

Debtors do not dispute that their assets became part of the estate upon the filing of the Chapter 7 petition. Rather, they claim that, by exempting the $100, the exemption should have been considered valid and the $100 should not have been subject to the exclusive control of the Trustee. (Doc. 23 at 10) ("Until someone objects, and until that objection is sustained, the property claimed exempt is exempt . . . [t]he proper balance is for the Debtor's exempt property to remain in the Debtor's possession and control unless and until an objection to that exemption is sustained."). Debtors are incorrect. It is true that the bankruptcy code allows Debtors to claim certain property as exempt upon the filing of the petition and that an exemption "is an interest of the debtor carved out of the bankruptcy estate for the benefit of the debtor and thereby shielded from creditor's claims." *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005); 11 U.S.C. § 522. However, the vast majority of federal courts to consider the issue have held that purportedly exempt property does not actually become exempt until the time for filing objections has elapsed or a court has affirmatively upheld the objection. *See, e.g., Schwab v. Reilly*, 130 S.Ct. 2652, 2668 (2010);

*Gebhart v. Gaughan and Chappell v. Klein*, 621 F.3d 1206 (9th Cir. 2010); *In re McLain*, 516 F.3d 301, 315 (5th Cir. 2008); *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 942-43 (D.N.M. 2008); *In re Calvin*, 329 B.R. 589, 601-02 (Bankr. S.D.Tex. 2005); *In re Zavala*, 2011 WL 1206194 at *4 (Bankr. E.D.Cal. March 11, 2011).

This conclusion is supported by the structure of the bankruptcy code. Bankruptcy Rule 4003 prescribes the manner in which exemption objections may be made and the procedure by which such objections will be considered. *See* Fed. R. Bank. P. 4003(b), (c) (stating that a party may file an objection to listed exemptions within 30 days of the meeting of the creditors or within 30 days of any amendment to the bankruptcy schedules and that the party objecting to the exemption bears the burden of proving that the exemption is not properly claimed).  Clearly the bankruptcy code anticipated the need for adversarial actions with regard to claims of exemption. As United States District Judge Christina Armijo noted, the provisions of Rule 4003(b) and (c)  "clearly contemplate judicial determination of a claim of exemption in the event that there are objections. Before that time, the claim of exemption is just that - a claim. If the debtor were permitted to use estate property before the claim of exemption was allowed . . . the procedure for determining objections could easily be thwarted." *Jimenez*, 406 B.R. at 943.

The turnover provisions of 11 U.S.C. § 542 further support the position that all of the bankruptcy estate must be turned over to the Trustee, regardless of a debtor's claim of exemption. Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . . *or that the debtor may exempt under section 522 of this title*, shall deliver to the trustee,

9

and account for, such property . . ." 11 U.S.C. § 542(a) (emphasis added).[5]  Section 542(b) directs that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee . . ." 11 U.S.C. § 542(b).[6] Regardless of whether the bank accounts constituted property that a trustee may use or a debt that it payable on demand, there is no doubt that under either provision, the Bank was required to turn control over the account to the Trustee, and not the debtors.[7] To accept Debtor's position that transferring the accounts to the trustee was a violation of the automatic stay would be to interpret the provisions of 11 U.S.C. § 362(a)(3) and 11 U.S.C. § 542 as contradictory. This the Court declines to do. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (noting that the different provisions of the bankruptcy code should not be read so as to contradict one another.").

Debtors have not cited any persuasive authority to suggest that they have standing to allege a violation of the automatic stay. The only two cases cited by Debtors for the proposition that they have standing are *In re Jimenez*, 335 B.R. 450 (Bankr. D.N.M. 2005), and *In re Mwangi*, 432 B.R. 812 (9th Cir. BAP 2010). In *Jimenez*, the bankruptcy court held that the claim of exemption was enough to confer standing to challenge the automatic stay

---

[5] The Bank is not a custodian for the purposes of 11 U.S.C. § 542(a). *See In re Bucchino*, 439 B.R. 761, 764 n.2 (Bankr. D.N.M. 2010)

[6] A bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995). Therefore, a bank account can properly be considered a "debt" that is property of the bankruptcy estate for the purposes of §542(b).

[7] In *In re Calvin*, the district court examined whether the provisions of 541(a) or 541(b) were more properly applicable to the disposition of funds being held in bank accounts at Wells Fargo. *Calvin*, 329 B.R. 589, 595-98. The court ultimately held that the Wells Fargo bank accounts were governed by 542(b), a holding implicitly echoed in *Jimenez*. *Id.* at 595-956; *Jimenez*, 406 B.R. at 944, 947-48.

violations with regard to the purportedly exempt property. *Jimenez*, 335 B.R. at 454-57 (Bankr. D.N.M. 2005). The court reasoned that, even though the bank accounts became property of the estate, debtors still retained a direct economic interest in the funds by virtue of their claim of exemption. *Id.* at 455. The court also made a policy argument for conferring standing on the debtors, asserting that debtors are "the most motivated to protect estate property to which the debtor has an exemption claim, and the debtor should not be denied the protection that the stay affords under the broad language of § 362(a)(3)." *Id.* at 455-56. The *Jimenez* decision was overturned by United States District Judge Christina Armijo on appeal. *See Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 942-43 (D.N.M. 2008).[8] As stated above, Judge Armjio noted that the plain language of the bankruptcy code establishes that a claim of exemption does not become valid until the time for objecting has passed. *Id.* at 941-42. She further noted that the bankruptcy court failed to consider the strictures of § 542, which required the bank to tender the bank accounts to the Trustee. *Id.* at 947-48. Therefore, upon filing the bankruptcy petition, the accounts became property of the bankruptcy estate and debtors had no legal right to access those funds. *Id* at 942-43. Judge Armijo's decision is supported by the developing body of caselaw which has considered this particular question. *See, e.g.*, *In re Zavala*, 2011 WL 1206194 at *4 (Bankr. E.D.Cal. March 11, 2011); *In re Bucchino*, 439 B.R. 761 (Bankr. D.N.M. 2010); *In re Calvin*, 329 B.R. 589, 601-02 (Bankr. S.D.Tex. 2005).

---

[8] Debtor's counsel cites extensively to the *Jimenez* bankruptcy decision without acknowledging that the decision had been overturned on appeal. (*See* Doc. 23 at 12, 14-15, 22-23). The Court would remind counsel of his duty of candor towards the tribunal, including the duty to disclose legal authority in the controlling jurisdiction known to the lawyer to be adverse to the position of the client. *See* NMRA, Rule 16-303 (incorporated by D.N.M.L.R.-Civ. 83.9).

The only as-yet unreversed case holding that Debtors have standing to challenge the transfer of their Wells Fargo bank accounts to the Chapter 7 Trustee is *In re Mwangi*, 432 B.R. 812 (9th Cir. BAP 2010).[9] In *Mwangi*, the Ninth Circuit bankruptcy appeals panel claimed that, although the exemption may not have been considered valid at the time the claim was made, "until the property claimed revests, the debtor holds an inchoate interest in the property." *Id.* at 821. The *Mwangi* court noted that an inchoate interest is one that "has not fully developed, matured, or vested." *Id.* The court failed to explain how an inchoate interest in a potential exemption sufficed to show that debtors had suffered an "injury in fact" that was fairly traceable to the Bank's conduct. *See In re Bucchino*, 439 B.R. 761, 771 (Bankr. D.N.M. 2010). No court has followed *Mwangi's* inchoate standing theory, and the decision has been disavowed by multiple courts. *See, e.g.*, *In re Zavala*, 2011 WL 1206194 at *4 (Bankr. E.D.Cal. March 11, 2011) (considering the same Wells Fargo policy at issue in *Mwangi* and determining that debtors do not have standing to assert a violation of the automatic stay);  *In re Young*, 439 B.R. 211 (Bankr. M.D.Fla., 2010) ("[T]he Court rejects the reasoning of *In re Mwangi* in which the court held that debtor derived standing from an "inchoate interest" in property claimed as exempt solely based on the claim of exemption . . ."); *In re Bucchino*, 439 B.R. at 771.

The Court does not find *Mwangi* to be persuasive. The bankruptcy panel's decision states that Debtors hold an inchoate interest in a speculative claim of exemption, without explaining how that interest suffices to establish a concrete injury. As the Supreme Court has stated, an "injury in fact" is one which is "concrete and particularized . . . [and] actual

---

[9] *Mwangi* is currently on appeal to the Ninth Circuit Court of Appeals.

or imminent, [and] not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Pacific Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1228-29 (10th Cir. 2005). Because the bank accounts became property of the bankruptcy estate upon the filing of the petition, Debtors no longer had a legal right to those funds. The funds were properly transferred to the Trustee pursuant to § 542, and only the Trustee was authorized to sue for purported violations of the automatic stay. 11 U.S.C. § 323(a), (b); *In re Calvin*, 329 B.R. 589, 601-02 (Bankr. S.D.Tex. 2005). Debtors suffered no actual injury because, at the time the Bank froze the accounts, those accounts did not belong to the Debtors. For that reason, the Court finds that Debtors lacked standing to commence their adversarial action. Because the Court finds that Debtors lacked standing to prosecute this action, the Court need not discuss whether the administrative pledge constituted a violation of the automatic stay.

### iii.    Debtors Seek A Legislative Remedy

Debtors make a number of policy arguments as to why a Chapter 7 Trustee cannot be counted on to protect Debtors' interests in purportedly exempt funds when the period for exemption objections has not yet run. (*See* Doc. 23 at 22)

> Trustees have hundreds of open files, and little time to devote to any of them. Trustees routinely defer decisions about whether or not to administer assets until the meeting of the creditors required by 11 U.S.C. § 341, which occurs a month after the case is filed. Wells Fargo has designed a policy that potentially allows their customers to starve while awaiting the intervention of an overworked, understaffed bankruptcy official with no interest in spending time on yet another no asset bankruptcy proceeding . . . A trustee has no interest, economic or practical, in obtaining possession of exempt property, or in assisting a debtor in regaining possession of exempt property taken from her by an overzealous bank. The Debtor should not be required to rely on a trustee in bankruptcy whose interests are adverse to her to protect her statutory right to exempt property.

*Id.* While the Court understands and sympathizes with the frustrating prospect of filing for

13

bankruptcy and then being unable to access purportedly exempt funds which are needed for every day survival, the relief advocated by Debtors is simply contrary to the structure of the bankruptcy code. Debtors are essentially making an argument for legislative change to the bankruptcy code, an argument better directed to the United States Congress. Judge Bohm of the bankruptcy court of the Southern District of Texas acknowledged this in stating,

> It is incumbent on the debtors' bar to properly counsel their clients about the pitfalls of filing a Chapter 7 petition when any client has significant cash in a bank account. The putative debtor needs to understand that as soon as the petition is filed, the right to use the funds ceases either (a) forever, if the funds are nonexempt (unless abandoned); or (b) if the funds are claimed as exempt, for several weeks until the period to object to exemptions has expired.

*Calvin*, 329 B.R. at 604-05 (Bankr. S.D.Tex. 2005). However hollow that solution may seem to a Debtor facing the loss of needed funds, the Court is, by its nature, unable to offer more concrete relief.

## IV.    CONCLUSION

The Court finds that, upon the filing of the Chapter 7 petition, Wells Fargo was both authorized and required to transfer control over the Debtors' Wells Fargo accounts to the Chapter 7 Trustee. The funds ceased to be Debtors' property, and were properly transferred to the bankruptcy estate. Because only the Trustee is authorized to assert claims on behalf of the bankruptcy estate with regard to violations of the automatic stay, Debtors lacked standing to bring their adversarial action. For that reason, the Court **RECOMMENDS** that  the decision of the bankruptcy court be **AFFIRMED**.

14

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

15